CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone:  (415) 436-7224
   Facsimile:  (415) 436-6748
   jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIIPAL EMPLOYEES, AFL-CIO, *et al.*,<br><br>　　　Plaintiffs,<br><br>　v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>　　　Defendants. | Case No. 3:26-cv-00759-TLT<br><br>**DEFENDANTS' RESPONSES TO COURT'S QUESTIONS REGARDING PRELIMINARY INJUNCTION HEARING (ECF NO. 41)** |

## I.    Venue

### 1.    *State Of New York* Is The Only Related Case

The only related federal case is *State of New York, et al. v. Administration for Children and Families, et al.*, No. 26-cv-172 (S.D.N.Y.) ("*State of New York*").  New York, California, Colorado, Illinois, and Minnesota are all plaintiffs in that lawsuit.  There is no related case pending in the United States District Court for the District of Columbia.  The *State of New York* court issued a temporary restraining order on January 9, 2026 and a preliminary injunction on February 6, 2026.  *State of New York*, ECF Nos. 22 & 71.  The *State of New York* court issued a further written memorandum on March 10, 2026 regarding the preliminary injunction.  *State of New York*, ECF No. 80.  Defendants are complying with the terms of the *State of New York* preliminary injunction, and Plaintiffs' request for preliminary relief in the above-captioned case is wholly duplicative of the existing *State of New York* preliminary relief.

### 2.    The Case Could Have Been Brought In The District Of Columbia

The venue statute applicable here, 28 U.S.C. § 1391(e), demonstrates that the lawsuit could have been filed in the District of Columbia.  That venue is where *all* Defendants reside, where "a substantial part of the events or omissions giving rise to the claim[s] occurred," and where two of the six Plaintiffs reside; a third Plaintiff resides less than 10 miles from Washington, D.C.

### 3.    The Section 1404(a) Factors Are Either Neutral Or Weigh In Favor Of Transfer

**Plaintiffs' choice of forum**:  The deference accorded to Plaintiffs' choice of forum is "diminished."  The vast majority of Plaintiffs do not reside here, and the operative agency decisions underlying this lawsuit did not occur here—they instead all occurred in the District of Columbia.  *Ecological Rights Found. v. United States EPA*, No. 19-cv-04242-RS, 2019 WL 5295124, at *3 (N.D. Cal. Oct. 19, 2019); *Southard v. Kipper Tool Co.*, No. 15-cv-03621-JSC, 2023 WL 6959145, at *3 (N.D. Cal. Oct. 19, 2023).  Plaintiffs' arguments against transfer focus on the purported effects of Defendants' actions in this district, but:  (1) only one Plaintiff resides here and, if harms actually exist, those harms would be felt overwhelmingly *outside* this district, and (2) the location where the purported effects of the challenged actions are felt is immaterial for venue purposes.  *See, e.g.*, *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. 19-cv-04854, 2020 WL 4039119, at *14 (D. Ariz. July 17, 2020); *Tex. Lottery Comm'n v. Ali Ansari*, No. 22-cv-00578, 2023 WL 11844245, at *2 (W.D. Tex. Mar. 31, 2023).

**Convenience of the parties**:  The District of Columbia is unquestionably a more convenient district for Defendants because *all* Defendants reside there.  Compl. ¶¶ 19-22.  The District of Columbia is a more convenient district *for Plaintiffs* as well:  two Plaintiffs reside there (Compl. ¶¶ 10 & 14); one other Plaintiff resides in North Bethesda, Maryland, approximately 10 miles from the District of Columbia (*id.* ¶ 15).  Plaintiffs argue that a "convenience argument [cannot be] based primarily on the logic that plaintiffs' choice of forum would be inconvenient to plaintiffs" (ECF No. 42 at 2), but Defendants' transfer request is not based "primarily" on Plaintiffs' inconvenience.  Of the ten plaintiffs and defendants in this lawsuit, seven are located either directly in or adjacent to the District of Columbia; only one resides here.

**Convenience of the witnesses**:  This factor is neutral.  This is an Administrative Procedure Act ("APA") review case, and the lawsuit will be resolved on cross-motions for summary judgment, rendering any appearance by witnesses for the sole in-district Plaintiff (AFSCME Council 57) unnecessary.

**Ease of access to the evidence**:  This APA case will be resolved based on the certified administrative record only.  Defendants' entire administrative record is located in the District of Columbia; no part of the administrative record is located here.

**Familiarity of each forum with the applicable law**:  Defendants do not question this Court's familiarity with APA review, but the District of Columbia—as the seat of the federal government and where all decisions at issue here were made—has unique insight into federal governmental workings.

**Feasibility of consolidation with other claims**:  There is a duplicative lawsuit in the Southern District of New York, where a preliminary injunction has already issued.  As a result, there unquestionably will be duplication of litigation if the case remains in this district.

**Any local interest in the controversy**:  Transferring this case to the District of Columbia would allow any adjudication of this case to occur in the forum where all the agency decisions were made, thereby "ensur[ing] systemic integrity and fairness in the judicial process, and the efficient administration of the court system." *Our Children's Earth Found. v. EPA*, No. 08-cv-01461-SBA, 2008 WL 3181583, at *5-6 (N.D. Cal. Aug. 4, 2008) (cleaned up).

**The relative congestion and time of trial in each forum**:  This factor is neutral; the median time between filing and disposition in the two districts appears broadly similar.[1]

**II.      Likelihood Of Success**[2]

**1.       CCDF, TANF, and SSBG Statutes**

The federal government unquestionably has a strong "interest in protecting the public fisc and eliminating the appearance of impropriety around these grant programs." *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 830 (D.C. Cir. 2025), *reh'g en banc granted, opinion vacated*, No. 25-5122, 2025 WL 3663661 (D.C. Cir. Dec. 17, 2025).  Defendants exercise these vital public interest oversight obligations by ensuring that federal taxpayer monies are used for the purposes for which they were appropriated; they do that by obtaining documentation from the state grantees, as permitted by law. Here, Plaintiffs claim that the "cited provisions do not authorize the withholding of funds" (ECF No. 42) but that is (1) not what Defendants have done (as discussed the following section and in the Inman Declaration (ECF No. 37-1), there is no "funding freeze") and (2) it is not what is at issue in this case. Instead, the relevant issue is whether Defendants can seek additional documentation from states to guard against fraud and misuse of federal taxpayer money; indisputably they can.

The Child Care and Development Fund ("CCFD") is authorized by the Child Care and Development Block Grant ("CCDBG") Act, 42 U.S.C. § 9857 *et seq*.  Pursuant to Section 658I(b)(1) of the CCDBG Act, the Secretary of HHS "shall review and monitor State compliance" with the Act.  42 U.S.C. § 9858g(b)(1).  CCDF regulations give the Secretary authority to "monitor programs funded under the CCDF for compliance with:  (1) the act; (2) the provisions of this part; and (3) the provisions and requirements set for in the CCDF Plan approved under § 98.18."  45 C.F.R. § 98.90(a).  CCDF regulations also require recipients to "make appropriate books, documents, papers, manuals, instructions, and records available to the Secretary, or any duly authorized representatives, for examination or copying on or off

---

[1] https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-1

[2] Each of the Court's questions highlight the fundamental disconnect between Plaintiffs' theory of Article III standing and the alleged harms at issue.  States—not Plaintiffs—receive these federal funds. And even assuming non-party individual workers and small businesses might be "downstream recipients" (Compl. ¶ 68) of some of the funds distributed to states, those funds still do not flow to *these Plaintiffs*, which are unions and a small business organization.  In other words, these Plaintiffs are not the correct entities to bring these claims.  Instead, the relevant plaintiffs (*i.e.*, the states that directly receive these funds) are *already* litigating their claims in *State of New York*.

the premises of the appropriate entity, including subgrantees and contractors, upon reasonable request." 45 C.F.R. § 98.90(c).

The Temporary Assistance for Needy Families ("TANF") program is authorized by 42 U.S.C. §§ 601-619.  TANF is governed by 2 C.F.R. § 200.300, which requires ACF to "manage and administer" TANF fundings "so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations . . . and the requirements of this part."  Recipients and subrecipients are required to have "financial management systems, including records documenting compliance with Federal statutes, regulations, and the terms and conditions of the Federal award" that are "sufficient to permit the . . . tracking of expenditures to establish that funds have been used in accordance with Federal statutes, regulations, and the terms and conditions of the Federal award."  *Id.* § 200.302(a).  These financial management systems must provide for "maintaining records that sufficiently identify the amount, source, and expenditure of Federal funds for Federal awards."  *Id.* § 200.302(b)(3).

The Social Services Block Grant (SSBG) is authorized by Title XX of the Social Security Act.  42 U.S.C. § 1397 *et seq*.  The statute authorizing SSBG provides that "the State shall report on the intended use of the payments the State is to receive under this division, including information on the types of activities to be supported and the categories or characteristics of individuals to be served."  42 USC 1397c. SSGB is subject to the general Block Grant Regulations at 45 C.F.R. Part 96.  Pursuant to 45 C.F.R. § 96.30, SSGB recipients must have "[f]iscal control and accounting procedures . . . sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant."

In addition, all grantees are subject to HHS and ACF's Standard Terms and Conditions ("T&Cs"). Inman Decl. ¶ 6.  The T&Cs provide that grant recipients must "[e]nsur[e] that expenditures are free from fraud, waste, abuse, and duplication."[3]  To that end, "[f]ailure to comply with the [Terms & Conditions] of the award may result in an enforcement remedy such as a disallowance, restricted drawdown,

---

[3]    https://acf.gov/sites/default/files/documents/main/FFY2025-ACF-STANDARD-TERMS-and-CONDITIONS--updated-2025-07-29-.pdf.

DEFENDANTS' RESPONSES TO QUESTIONS REGARDING PRELIMINARY INJUNCTION HEARING (ECF NO. 41)
No. 3:26-cv-00759-TLT                    4

withholding of future awards, deferral of claims for Federal Financial Participation (FFP), or termination of the award." *Id.*

### 2.     There Is No Funding Freeze, And Defendants Provided A Reasonable Explanation

The Court's question focuses on a "funding freeze" (ECF No. 41), but there has been no freeze on federal funds.  The agency's January 5 and 6 letters simply informed the states that they were placed on restricted drawdown pending review of each states' plans, use of funding, and implementation of certain internal controls.  In keeping with its notifications to New York, California, Colorado, Illinois, and Minnesota, the agency continued to process and approve drawdown requests after sending the January 5 and 6 letters subject to additional screening requirements.  Inman Decl. ¶¶ 39-41.

Notwithstanding this clarification, the January 5 and 6, 2026 letters provide a reasonable and reasonably explained explanation of the restricted drawdown process.  ACF noted that it was committed "to rooting out fraud, protecting taxpayer dollars, and ensuring program integrity across all federal benefit programs" and was "concerned by the potential for extensive and systemic fraud" in the subject programs. *See, e.g.*, ECF Nos. 1-1, 1-2, 1-3, 1-4.  These concerns were heightened by "recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted away from the American families they were intended to assist." *Id.*  Additionally, ACF had reason to believe that the states were not complying with federal requirements that establish certain immigration status eligibility requirements for beneficiaries. *Id.*  The reasoning explained in the letters to the states easily satisfies the reasonable and reasonably explained requirement for agency action because "in justifying its decision the agency need not provide written findings about every piece of evidence that it consider[s]." *Kakar v. United States Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022).

### 3.     States' Reliance Interests

Once again, this question underlines the disconnect between these Plaintiffs' alleged harms and the underlying claims—the *states'* reliance interests may be relevant to this APA review lawsuit, *but these Plaintiffs are not states*.  In any event, states cannot have a reliance interest in using federal taxpayer dollars for purposes for which they were not appropriated.  Here, statutes and regulations empower Defendants to ensure that taxpayer funds are utilized for approved purposes; no reliance interests of the states could establish otherwise.

DATED:  March 27, 2026                    Respectfully submitted,

                                          CRAIG H. MISSAKIAN
                                          United States Attorney

                                          */s/ Jevechius D. Bernardoni*
                                          JEVECHIUS D. BERNARDONI
                                          Assistant United States Attorney

                                          Attorneys for Defendants