UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

Defendants.

Case No. 26-cv-00759-TLT

**ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PURSUANT TO 5 U.S.C. § 705 AND PRELIMINARY INJUNCTION**

Re: Dkt. No. 24, 55

A generous reading of the record provided to this Court falls far short of the type of proof which might substantiate the government's sweeping claims of fraud. The uninspiring evidentiary showing only adds insult to the injuries that families and children in New York, California, Minnesota, Illinois, and Colorado face as a result of the government's attempted funding freeze. This Court, like its sister court in the Southern District of New York,[1] takes seriously its obligation to hold accountable executive officials who exceed their authority. The rule of law requires such accountability.

Pending before the Court is a motion for stay pursuant to 5 U.S.C. § 705 and the preliminary injunction filed by Plaintiffs American Federation of State, County, and Municipal Employees, Service Employees International Union, Main Street Alliance, United Domestic Workers of America, AFSCME Local 3930, AFSCME Council 31, and AFSCME Council 57. ECF 24; ECF 26. The Court heard oral argument on Plaintiff's motion on March 31, 2026.

Having carefully considered the parties' briefings, arguments, and caselaw, on March 31,

---

[1] *See New York v. Administration for Children & Families*, No. 1:26-CV-172 (VSB) (S.D.N.Y. Mar. 10, 2026)

2026, the Court **GRANTED** Plaintiffs' motion for a stay and preliminary injunction.  ECF 44.

Upon the Court's request, the parties submitted a proposed order for the Court's review.  ECF 51.

The Court issues this written order on its ruling and **ADOPTS** the parties' proposed order.

I. **Background**

A. **Background of Relevant Federal Programs and Funding**

The federal government funds various programs that provide critical assistance to families

and children, individuals with disabilities, and older Americans.  ECF 1 ("Compl.") ¶ 27.  These

programs include: (1) the Child Care and Development Fund ("CCDF"), (2) Temporary

Assistance for Needy Families ("TANF"), and (3) Social Services Block Grants ("SSBG").  *Id.*

1. **Child Care and Development Fund ("CCDF")**

CCDF is designed to assist children and families with low incomes.  *Id.* ¶ 28.  The intent

behind the program is to subsidize child care expenses and improve the overall quality and supply

of child care.  *Id.*  CCDF serves approximately 1.4 million low-income children and 850,000

families every month.  *Id.*

The United States Department of Health and Human Services ("HHS") administers CCDF.

*Id.* ¶ 29.  CCDF funded by two separate sources: the Child Care Entitlement to States ("CCES")

and the Child Care and Development Block Grant ("CCDBG").  *Id.*  Pursuant to 42 U.S.C. §

618(a)(1), each state is entitled to payments from CCES.  *Id.* ¶ 30 ("each State shall, for the

purpose of providing child care assistance, be entitled to payments") (citing 42 U.S.C. §

618(a)(1)).  CCDBG, in comparison, is subject to an annual appropriations process whereby ""a

State that has an application approved by the Secretary . . . shall be entitled to a payment under

this section for each fiscal year in an amount equal to its allotment under."  *Id.* ¶ 31 (quoting 42

U.S.C. § 9858m).

In 2025, Congress directed that $2.4 billion in federal funding would be provided to

California, Colorado, Illinois, Minnesota, and New York ("Targeted States"): $1.09 billion to

California, $140 million to Colorado, $412 million to Illinois, $185 million to Minnesota, and

$638 million to New York.  *Id.* ¶ 32.  To receive this funding, each state must "prepare and

submit" a "State plan" that certifies that the state has certain procedures and protections in place,

United States District Court
Northern District of California

and describes the state's training and professional development requirements, childcare standards, and health and safety requirements. *Id*. ¶ 33 (quoting 42 U.S.C. § 9858c). The HHS secretary must then approve any application that meets these requirements. *Id*.

### 2. Temporary Assistance for Needy Families ("TANF")

TANF funds state-run initiates by providing cash assistance and other benefits for low-income families and children. *Id*. ¶ 35. TANF funds are allocated based on a share each state had in 2002. *Id*. ¶ 36. In 2025, Congress appropriated $16,566,542,000 to TANF. *Id*. ¶ 37.

To be eligible for TANF, a state must submit to the secretary a plan outlining how the State will conduct the TANF program in compliance with federal work requirements, privacy protections, and other provisions. *Id*. ¶ 39.

### 3. Social Services Block Grants ("SSBG")

SSBG provides approximately $870 million every year to the Targeted States. *Id*. ¶ 40. The program allows the Targeted States "flexibility" and funding to support social services in one of five categories: (1) "achieving or maintaining economic self-support"; (2) "achieving or maintaining self-sufficiency"; (3) addressing "neglect, abuse, or exploitation" of children and vulnerable adults; (4) preventing institutional care and supporting community-based care; and (5) where institutional care is needed, supporting application and admission and providing services to institutionalized individuals. *Id*. (quoting 42 U.S.C. § 1397).

States are not required to submit a plan to be eligible for SSBG funding. *Id*. ¶ 42.

### B. Factual Background

Over the past year, the Trump administration has used federal funding to threaten political opponents and various blue, Democratic states. Compl. ¶ 44–45, 46. The scheme involves ordering a sweeping review" of states by multiple agencies, allegations of fraud, prosecutions, demands for production of states' "complete universe" of data and records, and freezing of federal funds. *Id*. ¶¶ 49–56.

On January 4, 2026, President Trump addressed Democratic governors and stated "[b]ut think of it, $19 billion at least they [Somali-Americans] have stolen from Minnesota and from the United States . . . . And we're not going to pay it anymore. We're going to have [Minnesota

3

Governor Tim] Walz go pay. We're not going to pay them, and we're not going to pay California, and we're not going to pay Illinois with a big slob of a governor that they have." *Id.* ¶ 61.

On January 5, 2026, President Trump stated "Governor Walz has destroyed the State of Minnesota, but others, like Governor Gavin Newscum, JB Pritzker, and Kathy Hochul, have done, in my opinion, an even more dishonest and incompetent job. NO ONE IS ABOVE THE LAW!" *Id.* ¶ 62.  The same day, a U.S. Department of Health and Human Services spokesperson stated "Democrat-led states and Governors have been complicit in allowing massive amounts of fraud to occur under their watch." *Id.* ¶ 63.

On January 6, 2026, Defendants U.S. Department of Health and Human Services ("HHS"), HHS Secretary Robert F. Kennedy Jr., the Administration for Children and Families ("ACF"), and ACF assistant secretary Alex J. Adams announced a $10 billion funding freeze to certain federal childcare and family assistance funds for California, Colorado, Illinois, Minnesota, and New York. Compl. ¶ 68.  Defendants "identified concerns that these benefits intended for American citizens and lawful residents may have been improperly provided to individuals who are not eligible under federal law" and claimed that the freeze was the result of "serious concerns about widespread fraud and misuse of taxpayer dollars in state-administered programs." *Id.* ¶ 70.  Defendants said that the "[f]unds will remain frozen in this fashion until ACF completes a review and determines that states are in compliance with federal requirements." *Id.* ¶ 71.

Defendants sent identical letters to each of the Target States' governors that notified them that funding to the CCDF, TANF, and SSBG programs would be immediately frozen. *Id.* ¶ 73. According to the letters, Defendants were "concerned by the potential for extensive and systemic fraud"; concerns "have been heightened by recent federal prosecutions and additional allegations that substantial portions of federal resources were fraudulently diverted away from the American families they were intended to assist"; and "ACF has reason to believe that" each state "is illicitly providing illegal aliens with . . . benefits intended for American citizens and lawful permanent residents." *Id.* ¶ 74.

### C.  Procedural History

On January 23, 2026, Plaintiffs American Federation of State, County, and Municipal

*United States District Court*
*Northern District of California*

Employees ("AFSCME"), Service Employees International Union ("SEIU"), Main Street Alliance ("MSA"), United Domestic Workers of America ("UDW"), AFSCME Local 3930, AFSCME Council 31, and AFSCME Council 57 filed a complaint against Defendants. ECF 1.

Plaintiff AFSCME is a labor organization that is headquartered in Washington, D.C. *Id*. ¶ 10. AFSCME is the largest trade union of public employees and consists of approximately 3,400 local unions, 58 councils and affiliates in 46 states, the District of Columbia, and Puerto Rico. *Id*. ¶ 11. Individual members include childcare providers that provide caregiving services to low-income families. *Id*. ¶¶ 11–12.

Plaintiff AFSCME Council 31 is a subordinate body of Plaintiff AFSCME and represents the state of Illinois. *Id*. ¶ 17. Members include state employees that administer CCDF, TANF, and SSBG funding. *Id*.

Plaintiff AFSCME Council 57 is a subordinate body of Plaintiff AFSCME and represents members in Northern California and the Central Valley. *Id*. ¶ 18. Members include public employees that administer CCDF, TANF, and SSBG funding. *Id*.

Plaintiff UDW represents approximately 25,000 independent child care providers in California and is an affiliate of AFSCME. *Id*. ¶ 16. UDW has collective bargaining agreements with the state of California that affect over more than 220,000 home care and child care providers. *Id*.

Plaintiff SEIU is a labor organization that is headquartered in Washington, D.C. *Id*. ¶ 14. SEIU consists of approximately two million workers that strive for a society in which all workers, families, and communities can thrive. *Id*. SEIU members educate and care for children, deliver TANF services, provide patient care, and keep communities clean, safe, and healthy. *Id*. Approximately 200,000 members are represented in the Northern District of California. *Id*.

Plaintiff MSA is a national network of approximately 30,000 small businesses that is headquartered in North Bethesda, Maryland. *Id*. ¶ 15. MSA aims to amplify the voices of small businesses by sharing experiences and opportunities. *Id*.

Plaintiffs' complaint alleges violation of: (1) the Administrative Procedure Act for action not in accordance with law and exceeding statutory authority; (2) the Administrative Procedure

Act for arbitrary and capricious agency action; (3) First Amendment (viewpoint discrimination); (4) First Amendment (retaliation); First Amendment (expressive association); and (5) Fifth Amendment (equal protection). *Id*. ¶¶ 151–196.

On January 28, 2026, Plaintiffs filed a motion for preliminary injunction and stay pursuant to 5 U.S.C. § 705. ECF 24–ECF 26. On February 25, 2026, Defendants filed an opposition. ECF 37. On March 6, 2026, Plaintiffs filed a reply. ECF 39. On March 13, 2026, Plaintiffs filed a notice of statement of recent decision in support of their motion for preliminary injunction and stay. ECF 40. A hearing on Plaintiffs' motion was held on March 31, 2026. ECF 44. The Court issued its order from the bench and invited a proposed order for signature based upon the findings made in open court. ECF 44. The parties submitted a proposed order on April 15, 2026. ECF 51.

## II.    Legal Standard

"The factors considered in determining whether to postpone agency action pursuant to § 705 substantially overlap with the *Winter* factors for a preliminary injunction." *Immigrant Defenders Law Center et al., v. Noem et al.*, No. 25-2581, 2025 WL 2080742, at *7 (9th Cir. July 18, 2025). "There is substantial overlap . . . not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Court's review is guided by the following *Winter* standards:

> Under the original *Winter* standard, a party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Under the "sliding scale" variant of the Winter standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two Winter factors are satisfied.

*Immigrant Defenders*, 2025 WL 2080742, at *8.

Ultimately, whether to postpone is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (internal citation omitted). Plaintiffs bear "the burden of showing that the circumstances justify an

exercise of that discretion." *Id*. at 433–34.

## III.    Discussion

Plaintiffs argue that the Court should stay HSS' freeze because (A) the Court has jurisdiction to grant relief; (B) Plaintiffs are likely to succeed on the merits of their APA claims; (C) Plaintiffs will suffer irreparable harm; and (D) the balance of harms and public interest weigh in favor of a stay.  ECF 26.

### A.    The Northern District of California is the Proper Venue for Plaintiff's Motion

Defendants argue that the case should be transferred to the District Court for the District of Columbia because at least two Plaintiffs reside in and the contested decisions were made in the District of Columbia.  ECF 37 at 9–10.

A case may be transferred "[f]or the convenience of parties and witnesses, in the interest of justice," to "any other district . . . where it might have been brought[.]"  28 U.S.C. § 1404(a).  There are two prongs to this analysis.  First, the Court must conclude that venue is proper in the transferee district.  *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc*., No. 03-cv-3711, 2003 WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003).  The movant bears the burden of proving this prong.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). If the first prong is satisfied, the Court balances "the plaintiff's interest to freely choose a litigation forum against the aggregate considerations of convenience of the defendants and witnesses and the interest of justice."  *Wireless Consumers*, 2003 WL 22387598, at *2; *see also* 28 U.S.C. § 1404(a).

#### i.    Plaintiffs concede that the matter could be transferred to the District of Columbia, however, such a transfer is not required.

Defendants argue that the case could have been brought in the District of Columbia because that is where all Defendants reside, a substantial part of events occurred in the district, and at least two of the six Plaintiffs reside less than 10 miles from the District of Columbia.  ECF 37 at 10. Plaintiffs do not appear to dispute that the District of Columbia could have been brought in the District of Columbia.  ECF 39 at 3–6.

"Section 1404(a) permits transfer only to a district "where [the action] might have been brought." *Barton v. Procter & Gamble Co*., No. 24-cv-1332, 2025 WL 3558932, at *3 (S.D. Cal.

United States District Court
Northern District of California

Dec. 11, 2025) (quoting 28 U.S.C. § 1404(a)). "The phrase where an action 'could have been brought' is interpreted to mean that the proposed transferee court would have subject matter jurisdiction, proper venue, and personal jurisdiction." *Id*. (internal citation omitted).  As the party seeking to transfer, Defendants bear the "burden of showing that jurisdiction and proper venue would exist in the district to which a transfer is requested." *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc*., No. 03-cv-3711, 2003 WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003).

Although Plaintiffs argue that the Court need not consider whether to transfer venue because Defendants have not filed a properly noticed motion, the Court may transfer venue "so long as the parties have the opportunity to present their views on the issue." *Crane v. City of Dunsmuir*, No. 20-cv-7010, 2021 WL 603030, at *1 (N.D. Cal. Jan. 4, 2021).  Plaintiffs concede that the case could have been brought in the District of Columbia, but argues that transfer is not required. ECF 39 at 4. Defendants do not take the position that transfer of this case to the District of Columbia is mandatory.  ECF 44.

### ii.    Examination of the § 1404(a) factors and whether they warrant a transfer

Defendants argue that the Northern District of California lacks a significant connection to the action because none of the government's decisions occurred in the Northern District of California.  ECF 37 at 10–11.  Defendants also argue that the District of Columbia has a local interest because Defendants are headquartered in the District of Columbia and more than 80% of Plaintiffs are located outside of the Northern District of California.  *Id*. at 11–13.  Plaintiffs argue that APA cases are not required to be brought in the District of Columbia, most Plaintiffs are based outside of the District of Columbia, and Defendants' decision to freeze funds results in downstream effects on recipients in the Northern District of California.  ECF 39 at 3–6.

"Under § 1404(a), the district court has great discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted).  "This Circuit set forth several considerations that can be used in weighing these factors. These include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law,

8

(6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Royal Queentex Enters. Inc. v. Sara Lee Corp.*, No. 99-cv-4787, 2000 WL 246599, at *2 (N.D. Cal., March 1, 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Weighing the relevant factors is a matter of "the discretion of the trial judge." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

None of the Defendants appear to be headquartered in California, and only one Plaintiff, AFSCME Council 57, claims to be headquartered in Oakland, California, which arguably means that California has a limited interest in the action. *See Lenk v. Semiconductor Component Indust., LLC,* No. 20-cv-8099, 2021 WL 3616769, at *4 (N.D. Cal. Aug. 16, 2021) ("Courts have noted that there is in fact a local interest of citizens in deciding matters pertaining to businesses that are headquartered in the state.") (internal citation omitted); *GS Labs, LLC v. Cigna Health and Life Ins. Co.*, No. 24-cv-8749, 2025 WL 3019519, at *5 (N.D. Cal. Oct. 29, 2025). However, Plaintiffs AFSCME and SEIU represent thousands of childcare providers in California, and the federal freeze directly impacts recipients of those funds in this District. *See*, *e.g.,* Sforza Dec. (AFSCME) at ¶¶ 7–10, 13, 15; *see,* Harvey Dec. (SEIU) at ¶¶ 9–11. Defendants' argument that the District of Columbia has a local interest in the controversy based on the decisions underlying this action occurring in the District of Columbia is undermined by other considerations.  ECF 37 at 11.  As Plaintiff notes, the decision's aim was to disrupt the distribution of funds to communities in this District based on the perceived political views of this District's residents and elected representatives.  ECF 39 at 4.   The Court recognizes the profound impact the loss of funds would have on childcare providers in this District, and the interest of this District's political representatives to operate free from fear of unlawful retribution to their constituent for expression of their political views.

Moreover, Defendants' argument that the District of Columbia is a more appropriate venue for the convenience of the witnesses who participated in the decision-making process is weak because, "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum."

*Barton*, 2025 WL 3558932, at *7.  Defendants have otherwise failed to identify any third-party witnesses that would justify a transfer of venue.

Thus, Plaintiffs have shown that California, and residents of this District, have a particularized interest in resolving the issues raised in this litigation.

### B.  Plaintiffs are Likely to Succeed on the Merits of Their APA Claims

Plaintiffs argue that they are likely to succeed on the merits of their APA claims because the funding freeze is (i) a final agency action; (ii) contrary to law and in excess of statutory authority; and (iii) arbitrary and capricious.  ECF 26 at 18–27.

### i.  Defendants' Letters to Five Targeted States Constitute Final Agency Action

Plaintiffs argue that the funding freeze constitutes final agency action because the Targeted States received letters stating that funds would be withheld effective immediately.  ECF 26 at 18. Defendants argue that the state letters are not final agency action because the letters articulated an intermediate step for the government to monitor the Targeted States' funds.  ECF 37 at 17–19.

"For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 981 (9th Cir. 2006) (internal quotations omitted).

The Court finds that Defendants' letters are final agency actions pursuant to the APA.  The letters included Defendants' definitive statements that the Targeted States that amounted to a consummation of the agency's decision to freeze the Targeted States' funding.  Indeed, the letters states that the Targeted States "will be placed on a temporary restricted drawdown for all SSBG funds provided by ACF until further notice, pending successful and satisfactory review of all of the requested information."  ECF 25, Exh. 19.  *See Indus. Customers of NW Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 645 (9th Cir. 2005) ("The finality doctrine is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.") (internal quotations omitted).  The restricted drawdown resulted in the Targeted States not being able to draw from SSGB funding.  ECF 25, Exh. 19. See *Or. Nat. Desert*

United States District Court
Northern District of California

*Ass'n*, 465 F.3d at 983 (holding letter constituted final agency action where letter reflected the consummation of a process that set[] the parameters for the upcoming grazing season and . . . impose[d] legal consequences on the permit holder."); *Columbia Riverkeeper v. United States Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014) ("[E]ven if the agency does not label its decision or action as final, it may be reviewable if it 'has the status of law or comparable legal force' or if 'immediate compliance with its terms is expected.'") (internal quotations omitted).

### ii. The Freeze was Likely Contrary to Law and In Excess of Statutory Authority

Plaintiffs argue the funding freeze is contrary to law and in excess of statutory authority because Congress has not authorized Defendants to impose an immediate freeze. ECF 26 at 19. Plaintiffs also argue that HHS did not follow the required statutory and regulatory processes to impose penalties. ECF 26 at 19–23. Defendants argue that the government has not violated a clear and mandatory statutory requirement and only required Targeted States to submit additional documentation. ECF 37 at 19.

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters*, 603 U.S. at 412

The Court finds that Defendants acted contrary to law and in excess of statutory authority. Notably, Defendants fail to provide any binding or persuasive authority to demonstrate that Defendants may require additional documentation prior to release of funds. *See* ECF 37 at 19. The SSBG statutes provide clear instructions for disbursement of SSGB funds to the Targeted States. Pursuant to 42 U.S.C. § 1397a, "[e]ach State shall be entitled to payment under this division for each fiscal year in an amount equal to its allotment," and that "[t]he Secretary shall make payments . . . to each State[.]" Moreover, 42 U.S.C. § 1397b(b) specifically requires funds be allocated based on census data—not production of data. *See id*. ("The allotment for any fiscal year for each State other than the jurisdictions of Puerto Rico, Guam, the Virgin Islands, American

Samoa, and the Northern Mariana Islands shall be an amount which bears the same ratio to . . . the amount specified in subsection (c), reduced by . . . the total amount allotted to those jurisdictions for that fiscal year under subsection (a)").

Accordingly, the Court finds that the funding freeze was contrary to law and in excess of statutory authority.

### iii.   The Freeze was Likely Arbitrary and Capricious

Plaintiffs argue that the freeze action is not reasonable and reasonably explained, HHS failed to examine evidence or data, and HHS overlooked alternatives to the problem before it, and HHS failed to account for substantial reliance interests.  ECF 26 at 25–27.  Defendants argue the freeze was the result of the government's concerns of fraud and insufficient internal controls.  ECF 37 at 20.

The APA requires the Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a).  Moreover, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

The Court finds that the freeze was arbitrary and capricious.  "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Defendants fail to provide such an explanation.  Instead, Defendants only offer unsupported and conclusory allegations of fraud.  Defendants' declaration in support of their opposition simply states that "[i]n early January 2026, ACF became concerned about potential fraud in the states of California, Colorado, Illinois and New York" without any background explanation.  ECF 37-1 ¶ 32.  Regarding Minnesota, the same declaration simply states that "ACF became aware of reports alleging fraud in Minnesota."  ECF ¶ 28.  Defendant's opposition does not otherwise dispute Plaintiffs' argument that HHS failed to examine evidence or data and that HHS failed to account for substantial reliance interests.  *See* ECF 37 at 20.

### C.  Plaintiffs Will Suffer Irreparable Harm Absent Relief

Plaintiffs argue that the Targeted Funding Freeze will compromise funding for child care and family assistance providers, result in loss of business, cause individuals to lose their jobs, and reduce agencies' abilities to respond to the needs of residents. ECF 26 at 29–32. Defendants argue that Plaintiffs will not suffer irreparable harm because a separate district court in *State of New York* has already issued a preliminary injunction Defendants for all of the same alleged conduct. ECF 37 at 14–15. Defendants also argue that Plaintiffs will not suffer irreparable harm because Plaintiffs will receive funding if New York, California, Colorado, Illinois, and Minnesota provides the government with requested data. ECF 27 at 16–17.

Plaintiffs must show that they will suffer irreparable harm absent relief. *See Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (citing *Winter*, 555 U.S. at 20). "If a plaintiff bringing such a claim shows he is likely to prevail on the merits, that showing will almost always demonstrate he is suffering irreparable harm as well." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up).

The Court agrees that Plaintiffs will suffer irreparable harm absent relief. As explained by the Ninth Circuit, there is "no authority that holds that issuing a duplicative injunction is a bar to preliminary injunctive relief." *Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025). "Indeed, district courts frequently issue overlapping preliminary injunctions on the same subject matter." *Id.*; *see also California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1066 (N.D. Cal. 2019) (N.D. Cal. 20 ("The Court concludes that the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate Oregon's claimed irreparable harm."). Here, Plaintiffs and their members risk losing their businesses, jobs, and the ability to provide child care and family assistance. *See* ECF 27-1 ¶¶ 6–8; ECF 27-2 ¶¶ 4–5; ECF 27–3 ¶¶ 7–9; ECF 27-4 ¶¶ 6–16, ECF 27-5 ¶ 10–51; ECF 27-6 ¶ 13–15; ECF 27-7 ¶¶ 8–10; ECF 27-8 ¶¶ 6–7; ECF 27-9 ¶¶ 9–11; ECF 27-10 ¶¶ 9–11; ECF 27-11 ¶¶ 6, 11; ECF 27-12 ¶¶ 14–24; ECF 27-13 ¶¶ 7–9; ECF 27-14 ¶ 8; ECF 27-15 ¶¶ 12–23; ECF 27-16 ¶¶ 7–9; ECF 27-17 ¶¶ 8–9; *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("We agree with the district court that the Organizations have established that they will suffer a significant change in their programs and a concomitant loss of funding absent a

United States District Court
Northern District of California

preliminary injunction enjoining enforcement of the Rule. . . Both constitute irreparable injuries: the first is an intangible injury, and the second is economic harm for which the Organizations have no vehicle for recovery.").

Accordingly, the Court finds that Plaintiffs will suffer irreparable harm absent relief.

### D. The Balance of Equities and Public Interest Weigh in Favor of a Stay

Plaintiffs argue that the balance of equities and public interest favor a stay because Defendants will face no harm and a stay ensures that a federal agency complies with the law.  ECF 26 at 33–34.  Defendants argue that a stay would prevent the government from screening requests to prevent fraud, waste, and abuse.  ECF 37 at 21.  Defendants argue that Plaintiffs have the choice of whether to keep the programs operating and, if Plaintiffs chose not to, then the harm is of their own doing. *Id*.

When the government is the opposing party, the balancing of the "harm to the opposing party and weighing the public interest" merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit "has consistently balanced the public interest on the side of the plaintiffs against the public interest on the side of the government to determine where the public interest lies." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020).

The Court finds that the balance of equities and public interest favor a stay.  As discussed above, Plaintiffs will likely succeed on the merits of their claims.  *See supra* Section III(B). The public has an interest in having a government that complies with federal laws.  *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").  Moreover, although Defendants argue that a stay would prevent the government from screening fraud, abuse, or fraud, Defendants have failed to provide evidence demonstrating any harm.  *See Am. Fed'n of Gov't Empl. v. Trump,* 139 F.4th 1020, 1029–1030 (9th Cir. 2025) ("Defendants' claims of irreparable injury do not even come in the form of a sworn declaration. Nor are they persuasive, alleging only that the government will suffer injury from having to retain and pay federal employees who would have otherwise been terminated pursuant to the Executive Order and its implementation.").  Plaintiffs, on the other hand, have submitted ample evidence

14

demonstrating that Plaintiffs and their members risk losing the ability to fund critical childcare and social services.  *See supra* Section III(C); *compare with Dep't of Education v. California*, 604 U.S. 650, 652 (2025) (granting government's request to vacate and stay district court's grant of preliminary injunction where "Respondents have represented in this litigation that they have the financial wherewithal to keep their programs running. So, if respondents ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum.").

IV.    **Conclusion**

After consideration of Plaintiffs' motion, accompanying memorandum of law, and supporting exhibits, and for good cause shown, it is hereby **ORDERED** that:

(1) Plaintiffs' motion for stay under 5 U.S.C. § 705 and preliminary injunction is **GRANTED**, as further clarified below; and it is further

(2) Good cause having been shown for the issuance of a stay under 5 U.S.C. § 705, the Targeted States Funding Freeze—i.e., the decision announced in a Department of Health and Human Services press release on January 6, 2026, that withheld and halted federal funding from the Child Care and Development Fund, Temporary Assistance for Needy Families, and Social Services Block Grants programs to California, Colorado, Illinois, Minnesota and New York—is **STAYED** pursuant to 5 U.S.C. § 705 pending a final ruling on the merits of this case; and it is further

(3) Good cause having been shown for the issuance of a preliminary injunction under Rule 65(b) of the Federal Rules of Civil Procedure, Defendants; Defendants' officers, agents, employees; and all other persons who are in active concert or participation with Defendants or Defendants' officers, agents, or employees, are enjoined and stayed from implementing the Targeted States Funding Freeze, defined to include:

    a.  the entirety of the letters sent to California, Colorado, Illinois, Minnesota and New York on January 5 and 6, and any demands for data or information or other compliance requests therein; and

    b.  any restrictions, beyond those authorized by statute or regulation, on California, Colorado, Illinois, Minnesota and New York's ability to draw down funds

United States District Court
Northern District of California

under the Child Care and Development Fund, Temporary Assistance for Needy Families, and Social Services Block Grants programs.

(4) Plaintiffs are not required to post a bond.

Nothing in this order shall be construed to prevent Defendants from lawfully following the procedures to monitor and/or investigate potential non-compliance that are specified in 42 U.S.C. § 9858g and 45 C.F.R. part 98 with respect to the Child Care and Development Fund program, in 42 U.S.C. §§ 609, 610, and 617 and 45 C.F.R. parts 262 and 263 with respect to the Temporary Assistance for Needy Families program, or in 42 U.S.C. § 1397e and 45 C.F.R. part 96 with respect to the Social Services Block Grants programs.

Finally, having considered the parties' jointly submitted Stipulation and Proposed Order to Stay Proceedings, the parties' Stipulation is **GRANTED**. The proceedings are stayed pending the final disposition of *New York v. Administration for Children & Families*, No. 1:26-CV-172, (S.D.N.Y. Mar. 10, 2026). In addition to staying any disclosure deadlines and conferences in this matter, neither side will seek discovery during the pendency of the stay. Granting the parties stipulation to stay proceedings does not foreclose the Court from entering this Order.

This Order shall become effective immediately upon entry by this Court.

This Order resolves ECF 24 and 55.

IT IS SO ORDERED.

Dated: June 18, 2026

TRINA L. THOMPSON
United States District Judge